IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANIEL LANDIS,

                    Petitioner,                           OPINION AND ORDER

        v.
                                                          14-cv-720-bbc

REED RICHARDSON, Warden,
Stanley Correctional Institution,

                    Respondent.

---

Daniel Landis is confined at the Stanley Correctional Institution in Stanley, Wisconsin, where he is serving sentences imposed by the Circuit Court for Vernon County following his conviction for possession of burglarious tools, carrying a concealed weapon, contributing to the delinquency of a minor, receiving stolen property, robbery with the threat of force and attempted burglary armed with a dangerous weapon, all as a party to the crime. Petitioner has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is in custody in violation of the laws or Constitution of the United States. In an order entered November 18, 2014, I directed the state to respond to the following claims: (1) petitioner was denied his right to due process by the state's failure to meet its burden of proof on every element of the charged crimes; (2) the state courts acted unconstitutionally when they denied his post conviction motion for an evidentiary hearing and new trial on newly discovered evidence having to do with the issue of his identity; and (3) the state court violated petitioner's right not to be put twice in jeopardy when it charged

and convicted him of both robbery and concealing or receiving stolen property.  (Petitioner also raised a jurisdictional challenge, which I determined was without merit.)

The state has filed an answer to the petition and both parties have filed briefs in support of their respective positions.  Having read the pleadings, the briefs and the records from the state court proceedings, I conclude that the petition must be denied.  Petitioner has failed to overcome the very high bar necessary to establish that the state appellate court was objectively unreasonable in deferring to the jury's verdicts on the possession of burglarious tools and carrying a concealed weapon charges.  His newly-discovered evidence claim is not reviewable because it is not linked to any underlying constitutional error that occurred at his trial and his double jeopardy claim is procedurally defaulted.

BACKGROUND AND PROCEDURAL HISTORY

While on patrol during the early morning hours of October 21, 2005, Vernon County Deputy Sheriff Matt Sutton noticed a GMC Suburban parked in a church parking lot in the unincorporated burg of Red Mound.  Sutton drove into the lot to check on the vehicle and saw that there were people inside.  Sutton parked his squad in front of the Suburban and made contact with its four occupants, who were petitioner, his brothers Don Landis and Justin Landis, and Jared Molner.  After a warrant check revealed that Molner had outstanding warrants, Sutton placed Molner under arrest in his squad car, then announced to the remaining occupants that he was going to search the Suburban pursuant to the arrest.  This news had a noticeable effect on the Landis brothers, who began to fidget and rock in

their seats and protest that Sutton had no right to search the vehicle.  Petitioner got out of the vehicle and was speaking to Sutton when Don Landis grabbed what appeared to be a tan sack or vest and fled the vehicle for the nearest cornfield.

One thing led to another:  Sutton placed petitioner and Jared Landis under arrest, called for backup and searched the Suburban, finding two loaded weapons on the floorboard of the backseat along with a camouflaged bulletproof vest, a camouflaged bulletproof helmet, a large crowbar, four to six pairs of gloves, two hooded masks, a black ski mask, two walkie-talkies, a Radio Shack Weather alert 200 Radio Scanner (used to scan police, fire, and other radio frequencies), a Radio Shack Police Call Frequency Guide and an invoice from Skyview DBS Radio Shack in Viroqua made out to petitioner.  During the ensuing investigation, the sheriff's department learned that petitioner had purchased the Suburban the previous evening from an individual in Rochester, Minnesota named Sheldon Edd and that he had paid in cash.  Edd was contacted and asked to hold on to the cash; some of the bills matched up with bait bills that had been stolen during a robbery of the DeSoto Bank in Crawford County 16 days earlier, on October 5, 2005.

Searches of the Landis's property and Molner's property and associated vehicles uncovered more bait bills from the DeSoto bank along with those from another bank that had been robbed on October 18, 2005 in Harpers Ferry, Iowa.  In addition, investigators found a safe inside a BMW vehicle that contained a bait bill from the DeSoto robbery along with a spiral notebook with money value amounts written on the first page that nearly

matched the amount of money stolen from the DeSoto bank.  Petitioner told police that it was his safe and that he was the only one who knew the combination.

Also discovered during the investigation were two black motorcycles and three motorcycle helmets.  Witnesses to the DeSoto and Harpers Ferry bank robberies identified the motorcycles as having been used as the getaway vehicles and the helmets as being consistent with the ones worn by the bank robber and his getaway driver.  Police were able to lift a fingerprint off one of the helmets and found it a match to petitioner's; according to the FBI analyst who testified at trial, the fingerprint "could not have been made by anyone else."

Petitioner was charged with various crimes, including robbery of the DeSoto bank, possession of burglarious tools, carrying a concealed weapon, receiving or concealing stolen property and attempted burglary while armed with a dangerous weapon.  His case was tried to a jury on May 24-26, 2006, with petitioner opting to represent himself.  In addition to the foregoing evidence, the state presented the testimony of Jeremy Kane, who shared a jail cell with petitioner from February to March 2006.  Kane testified that petitioner told him that he had driven the motorcycle used during the DeSoto robbery and that his younger brother had also participated, that he and his brothers and Molner had robbed other banks including the one in Harpers Ferry and that on the night he and the others were stopped by Deputy Sutton, they were on their way to the DeSoto bank to rob it again at night because there was a safe there with a lot of money in it.  The state also played audio recordings of phone calls petitioner made from the Vernon County Jail to his grandfather, in which

petitioner stated that his brothers and Molner were refusing to testify against him and were going to "bite the bullet" for him.

The jury found petitioner guilty of all counts. Petitioner filed a direct appeal, raising the following grounds:  1) the evidence at trial was insufficient to establish his guilt on five of the six counts; 2) the circuit court failed to inform him what jurisdiction it was proceeding under; 3) the prohibition on double jeopardy was violated when he was convicted of committing a robbery and receiving stolen property from the same bank robbery; 4) the circuit court erroneously admitted other-acts evidence; and 5) the prosecutor relied on hearsay during his opening statement. In a decision dated October 20, 2011, the Wisconsin Court of Appeals affirmed, rejecting all of petitioner's claims. Petitioner then petitioned the Wisconsin Supreme Court for review, raising essentially these same claims with the exception of the double jeopardy claim, which he omitted.  On February 23, 2012, the Wisconsin Supreme Court denied his petition for review.

On March 7, 2012, petitioner filed a motion for postconviction relief pursuant to Wis. Stat. § 974.06, arguing that he had discovered new evidence that raised a question as to his involvement in the DeSoto bank robbery. Specifically, petitioner argued that he should get a new trial because 1) the FBI had changed its position that fingerprint analysis by a qualified expert is virtually irrefutable, and 2) the recent conviction of Molner for robbing the DeSoto bank showed that petitioner was innocent, insofar as his two brothers (who had also been convicted for their respective roles) had given statements indicating that only two or at most three people–not four–were involved in the burglary ring.  The circuit

court denied the motion summarily without a hearing, finding that petitioner had failed to demonstrate how a challenge to the fingerprint evidence would have affected the outcome of the trial and that his "odd man out" theory was too "specious, self-serving and far-fetched" to be developed into evidence that could be presented to a jury.

On appeal, the Wisconsin Court of Appeals agreed that the allegations in petitioner's motion were insufficient to warrant a hearing. With respect to the alleged refutability of fingerprint evidence, the court found that such evidence would not have changed the outcome of the trial given the other evidence linking petitioner to the bank robberies, including his apprehension in the Suburban containing burglarious tools, Kane's testimony and the recovery of bait money from one of the robberies in a safe to which only petitioner had access. As for Molner's conviction, the court pointed out that Kane had testified petitioner had told him that there were four people–including petitioner—involved in the burglary ring.

The Wisconsin Supreme Court denied petitioner's petition for review on August 4, 2014.

OPINION

A. Legal Standards

1. Exhaustion and procedural default

For reasons of comity, a state prisoner who contends that constitutional errors resulted in his confinement must first give the state courts an opportunity to correct the

errors and provide relief before he can seek a federal writ of habeas corpus. Duncan v.

Henry, 513 U.S. 364, 365 (1995) (per curiam); 28 U.S.C. § 2254(b)(1). This requirement,

known as the exhaustion requirement, has two components. First, the petitioner must

pursue all the means available to him in state court for challenging his conviction. 28

U.S.C.A. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies

available in the courts of the State . . . if he has the right under the law of the State to raise,

by any available procedure, the question presented."); Wallace v. Duckworth, 778 F.2d

1215, 1219 (7th Cir. 1985) (petitioner has exhausted his state court remedies where he has

"no further available means for pursuing a review of [his] conviction in state court.").

Second, to ensure that the state has the necessary "opportunity" to correct the alleged federal

errors, "the prisoner must 'fairly present' his claim in each appropriate state court (including

a state supreme court with powers of discretionary review), thereby alerting that court to the

federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan,

513 U.S. at 365–366); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). When a

petitioner has already pursued all his state court remedies but has failed to comply with this

fair presentment requirement, "it is not the exhaustion doctrine that stands in the path to

habeas relief, see 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine

of procedural default." Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004).

A petitioner may also procedurally default a federal claim by failing to meet a *state*

procedural requirement. Moore v. Bryant, 295 F.3d 771, 774 (7th Cir. 2002). "A federal

court will not review a question of federal law decided by a state court if the decision of the

state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." Id. (citations omitted).  In assessing whether a state court ruling is based on an "independent and adequate" determination of state law, the federal court must refer to the decision of the last state court to have ruled on the merits. Page v. Frank, 343 F.3d 901, 905 (7th Cir. 2003).

If a petitioner has procedurally defaulted a claim, a federal court cannot reach the merits of that claim unless the petitioner demonstrates (1) cause for the default and actual prejudice from failing to raise the claim as required, or (2) that enforcing the default would lead to a "fundamental miscarriage of justice." Steward v. Gilmore, 80 F .3d 1205, 1211-12 (7th Cir. 1996) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)).  To meet the "cause" requirement, there must have been some external impediment that prevented petitioner from raising the claim.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  A fundamental miscarriage of justice is established by demonstrating that it is more likely than not that no reasonable juror would have convicted petitioner in light of any new evidence. Schlup v. Delo, 513 U.S. 298, 327 (1990).

2. Review of state court decisions under 28 U.S.C. § 2254(d)

Assuming a petitioner has exhausted his claims by presenting them at all levels of state court review and avoided violating any state court procedural rules, then the federal court may review his claims on the merits.  That review, however, is sharply circumscribed by 28 U.S.C. § 2254(d), which  prohibits a federal court from granting habeas relief unless

the petitioner can show that the decision of the last state court to adjudicate his claims "was contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). Expanding on the meaning of these provisions, the Supreme Court has said that, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). Put another way, if fairminded judges could disagree about the correctness of the state court's conclusion, then federal habeas relief is not available. Id. at 102.

B. Petitioner's Claims

1. Sufficiency of the evidence

Petitioner contends that the evidence presented at trial was insufficient to support his convictions for possession of burglarious tools and carrying a concealed weapon. The state concedes that petitioner properly exhausted these claims by raising them before the court of appeals and in his petition for review to the Wisconsin Supreme Court.

Under the due process clause, a conviction cannot stand if the convicted person cannot show that the government failed to adduce sufficient evidence to enable a rational

trier of fact to find the essential elements of the charged crime beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 319 (1979).  In evaluating that showing, the court must

view the government's evidence in the light most favorable to the prosecution.  In addition,

challenges to the sufficiency of the evidence raised in a § 2254 petition are subject to a

"double dose" of deferential review:  the federal court must defer to the state court, which

in turn must defer to the jury.  Coleman v. Johnson, –– U.S. ––––, 132 S.Ct. 2060, 2062

(2012) (per curiam).  Not surprisingly, such challenges are rarely successful.

        This is not one of these rare cases.  To convict petitioner of possession of burglarious

tools, the jury had to find that petitioner had in his personal possession "a device or

instrumentality intended, designed or adapted for use in breaking into any depository

designed for the safekeeping of any valuables or into any building or room" and that he

intended to use such device or instrumentality to break into a depository, building or room,

and to steal therefrom.  Wis. Stat. § 943.12; Tr. of Jury Trial, Day Three, dkt. 12, at 620.

Here, there was ample evidence from which a rational juror could find that the state had met

its burden.  As the state court of appeals found, petitioner's having been apprehended in a

vehicle containing not only a crowbar but firearms, masks and hoods, a radio scanner,

bulletproof vest, and helmet, along with his admission to Kane that he and the others were

on their way back to the DeSoto bank to rob it again and steal money from the vault, was

sufficient evidence to allow a rational juror to conclude that petitioner possessed tools

intended to break into a building and that he intended to use such tools to break into a

building and steal from it.  State v. Landis, 2010AP2117-CR (Wis. Ct. App. Oct. 20, 2011),

at ¶8, attached to Response to Pet., dkt. 9, exh. 6.

In support of his habeas petition, petitioner argues that this conclusion was

unreasonable absent evidence that any of the items in the Suburban were suitable for "safe

cracking," noting that Kane testified that petitioner had intended to break into the DeSoto

bank safe.  This argument is frivolous.  Obviously, petitioner and his cohorts would need to

first break into the bank in order to gain access to the safe, and the tools and other items in

their possession were clearly intended for that purpose.  Moreover, there is no statutory

requirement that the alleged burglarious tools necessarily be "suitable" for burglarizing a safe

or building; it is enough that they were "intended" to be used for that purpose.  I agree with

the court of appeals that petitioner's admission to Kane that he and the others were planning

to break into the DeSoto bank on the night they were caught is sufficient to establish how

he intended to use the crowbar and other items found in the Suburban and to support his

conviction.  Even if I did not agree, petitioner is entitled to habeas relief only if he can show

that the state appellate court's decision was "well outside the boundaries of permissible

differences of opinion," Jackson v. Frank, 348 F.3d 658, 662 (7th Cir. 2003) (internal

quotation marks omitted), or completely inconsistent with the facts and circumstances of

the case.  Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002).  He does not come close

to making that showing.

As for the concealed carry charge, the state appellate court reasoned that

A jury could reasonably conclude that guns on the floor of a car behind the
driver's seat are "hidden from ordinary observation."  To observe the guns, a

person would have had to approach the vehicle closely and look down in a manner that would be out of the ordinary. To the extent the jury might have been concerned that guns were not concealed because it was still physically possible to see them with effort, the second sentence of the instructions clarified that complete invisibility is not required to find guilt. Therefore, we conclude that the evidence was sufficient to support the verdict.

Landis, 2010AP2117-CR, at ¶5.

Although petitioner's challenge to this conclusion is not entirely clear, I understand him to be arguing that the court of appeals' decision did not take into account two key facts: 1) it was dark outside, making any weapon difficult to see no matter where it was located in the vehicle; and 2) petitioner told Deputy Sutton that there was a gun in the car. Neither of these arguments carries the day. As for the darkness argument, Sutton testified that the headlights of his squad car were shining into the Suburban when he first made contact with petitioner and the other occupants. Tr. of Jury Trial, Day 1, dkt. 10, at 215. Moreover, no matter what time of day it was, a reasonable juror could easily conclude that a weapon located on the floorboards behind the driver's seat and under the feet of the passengers was "hidden from ordinary observation." As for petitioner's suggestion that the weapons were not "concealed" because he told Deputy Sutton there was a deer rifle in the vehicle, Deputy Sutton testified that petitioner did not reveal this fact until after all the occupants had been removed (or had fled) from the vehicle and in any case, petitioner was not honest about the types of weapons that were there.

As the state court of appeals recognized, it was the jury's responsibility to consider all of the evidence and to determine whether the state had met its burden of proof on the concealed weapon and burglarious tools charges. None of petitioner's arguments is sufficient

to show that in deferring to the jury's verdict, the appellate court unreasonably applied the

standard set out in <u>Jackson</u>, or reached a decision based upon an unreasonable determination

of the facts.  Accordingly, federal habeas relief on this claim is barred.


2. <u>Denial of evidentiary hearing on new evidence related to identity</u>

Petitioner argues that the state courts' refusal to grant him an evidentiary hearing on

his newly-discovered evidence claim violated his constitutional right to due process.  As

noted above, petitioner contended that he was entitled to a new trial on his robbery

conviction because of two events that occurred after his conviction in 2005.  First, he

claimed that the FBI changed its official stance on the uniqueness of fingerprints following

the case of Brandon Mayfield, an Oregon resident whose fingerprint was erroneously found

to be a match to that of a terrorist who blew up a train in Spain.  Second, he contended that

the subsequent conviction of a fourth conspirator in the burglary ring (Molner) conflicted

with statements indicating that there were only two or three participants in the DeSoto bank

robbery.

Although the state contends that this court cannot review the merits of petitioner's

claim because he procedurally defaulted it by failing to comply with the state's procedural

requirements for evidentiary hearings, it is not necessary to consider this question because

petitioner's claim is not reviewable even if he has not defaulted it.  As petitioner

acknowledges in his petition, dkt. 1, exh. A, at 13, failure to grant a new trial on the basis

of newly discovered evidence is not a claim that is actionable in habeas corpus.  <u>Herrera v.</u>

Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). This is because "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." Herrera, 506 U.S. at 400 (citations omitted). If, for example, petitioner could show that the FBI agent who testified at his trial knew that there was no longer a consensus regarding the uniqueness of fingerprints, and that the prosecutor knew that he was presenting false testimony, then perhaps petitioner could establish the necessary constitutional violation during the state court trial that would entitle him to habeas relief. I do not understand petitioner to be making such a claim with respect to either the fingerprint evidence or Molner's conviction. Because petitioner claims only that the newly-discovered evidence cast doubt on evidence establishing him as one of the participants in the DeSoto robbery, he is not entitled to federal habeas relief.

For the sake of completeness, I note that petitioner's evidence is not so compelling that it would be a miscarriage of justice to deny him a new trial. The state courts reasonably concluded that there was ample evidence connecting petitioner to the bank robbery even without the fingerprint evidence. (Petitioner seems to forget that he was convicted as "a party to the crime" under Wis. Stat. § 939.05, which meant that the jury could find him guilty even if he did not directly rob the bank so long as there was evidence that he intentionally aided and abetted the crime or was a party to a conspiracy with others to

commit the crime.)  As for his "odd man out" theory, it appears to depend largely on hearsay statements from his co-conspirators that would be inadmissible at any new trial, not to mention that it is of questionable credibility in light of petitioner's inculpatory statements to Kane and the recorded calls he made to his grandfather.  In short, petitioner is not entitled to habeas relief on this claim.

3. Double jeopardy

Finally, as he did in his direct appeal, petitioner contends that his convictions for robbery and receiving or concealing stolen property were unlawful because they both involved the same property, money from the DeSoto bank.  Although petitioner sometimes frames his argument in terms of due process, what he is really raising is a multiplicity argument under the double jeopardy clause, that is, that he was convicted twice of the same offense.  Brown v. Ohio, 432 U.S. 161, 165 (1977) (double jeopardy clause "protects against multiple punishments for the same offense") (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989)). See also Blockburger v. United States, 284 U.S. 299, 304 (1932) (test for determining whether two offenses are sufficiently distinguishable to permit punishment on both without violating the double jeopardy clause is whether each statutory provision requires proof of an additional fact which the other does not).

There is no dispute that petitioner defaulted defaulted this claim by procedurally failing to include it in his petition for review before the Wisconsin Supreme Court.  There

15

is also no dispute that petitioner cannot show cause for this omission, having represented

himself during the appellate proceedings.  Murray, 477 U.S. at 488 ("cause" is shown where

"some objective factor external to the defense" impeded compliance with a procedural rule).

Nevertheless, petitioner argues that his default should be excused under the miscarriage-of-

justice exception.   This exception is reserved for those rare cases where a petitioner

establishes that "a constitutional violation has probably resulted in the conviction of one

who is actually innocent."  Id., 477 U.S. at 496.  To support a claim of actual innocence, the

petitioner must establish that, in light of new reliable evidence, "it is more likely than not

that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327

(1995)).

 Petitioner has not come forth with any new, reliable evidence that was not presented

at trial to show that he is actually innocent of the crime of receiving or concealing stolen

property.  Instead, his argument is a legal one:  the double jeopardy clause prohibits him

from being punished for that crime in addition to the theft of the property.  "Actual

innocence," however, means factual innocence, not mere legal insufficiency.  Sawyer v.

Whitley, 505 U.S. 333, 339 (1992) ("We emphasize[] that the miscarriage of justice

exception is concerned with actual as compared to legal innocence[.]").  Petitioner's claim

that he was convicted twice of the same crime does not raise a question of his actual

innocence.  Selsor v. Kaiser, 22 F.3d 1029, 1034 (10th Cir. 1994) (double jeopardy claim

that is not supplemented by claim of factual innocence does not satisfy fundamental

miscarriage of justice exception); Wallace v. Lockhart, 12 F.3d 823, 826-27 (8th Cir. 1994) (miscarriage of justice exception did not apply although murder and kidnapping convictions violated double jeopardy because petitioner did not claim that he was innocent of the kidnapping offense). See also Waite v. United States, 74 F.3d 1242, 1996 WL 4349, *1 (7th Cir. 1996) ("Waite does not claim factual innocence; he instead claims merely that the Double Jeopardy Clause prohibits a second punishment for the same offense. His claim is one of legal innocence, and does not meet the fundamental miscarriage of justice exception.") (unpublished disposition); Drummond v. United States, 41 F.3d 664, 1994 WL 2663, *2 (5th Cir. 1994) (petitioner's argument that he was subjected to double jeopardy because he was tried on two counts of the indictment did not raise a question concerning his actual innocence) (unpublished disposition). Accordingly, the claim is procedurally defaulted.

The claim would fail on the merits in any event. Assuming for the sake of argument that it violates double jeopardy to convict a person of both stealing and receiving the goods he has stolen, Milanovich v. United States, 365 U.S. 551, 554 (1961) ("taking and receiving, as a contemporaneous—indeed a coincidental—phenomenon, constitute one transaction in life and, therefore, not two transactions in law") (Frankfurter, J., dissenting), petitioner was not convicted of merely receiving stolen property, but of receiving *and* concealing stolen property. As the court of appeals noted, although petitioner was charged with the crime of knowingly or intentionally receiving *or* concealing stolen property under Wis. Stat. § 943.34, the trial court instructed the jury that it was not to find petitioner guilty

17

unless it found both that he received *and* concealed stolen property.  Tr. of Jury Trial, Day Three, dkt. 12, at 188-89.  State v. Landis, 2010AP2117-CR (Wis. Ct. App. Oct. 20, 2011), at ¶15 ("The jury instructions show that, for the one count of receiving and concealing stolen property, the jury was required to find that he did both.").

For the reasons stated by the state appellate court, I agree that the jury's finding that petitioner not only received but concealed stolen property removes any double jeopardy concerns.  As that court stated:

> [C]oncealment alone is sufficient to violate the statute, which criminalizes receiving "or" concealing stolen property.  Wis. Stat. § 943.34.  Therefore, even if the jury found that Landis robbed the bank and received stolen property from that same robbery, which would create a multiplicity problem, the jury also found that Landis took the separate step of *concealing* property stolen in that robbery, which does not create a multiplicity problem and is sufficient for a conviction.

Id. (emphasis in original).  Clearly, the act of concealing stolen property is conduct separable from the act of stealing it by threat of force and required proof of additional facts that the charge of robbery did not.  Accordingly, the state appellate court did not misapply clearly established federal law when it rejected petitioner's double jeopardy claim.

## C.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability.  A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2). The standard for making a "substantial

showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that)

the petition should have been resolved in a different manner or that the issues presented

were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S.

473, 484, 120 S.Ct. 1595, 1603–04 (2000) (internal quotation marks omitted).  If a district

court has rejected a petitioner's constitutional claims on the merits, "the showing required

to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or

wrong."  Id., 529 U.S. at 484, 120 S.Ct. at 1604.  If a district court dismissed a habeas

petition based on procedural grounds without reaching the underlying constitutional claims,

a certificate of appealability "should issue when the prisoner shows, at least, that jurists of

reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district

court was correct in its procedural ruling."  Id.  Each showing is a threshold inquiry; thus,

the court need only address one component if that particular showing will resolve the issue.

Id. at 485.

This petition should not proceed further.  No reasonable jurist would disagree that

petitioner's attacks on the evidence are far too weak to surmount the very high burden that

he bears on habeas corpus to show that the state appellate court's decision on his sufficiency-

of-the-evidence claim was objectively unreasonable.  In addition, no reasonable jurist would

with the conclusion that petitioner cannot obtain habeas relief on his newly-discovered

evidence claim.  Not only has he failed to link that claim to any constitutional errors that

occurred at his trial, his evidence is specious at best.  As for his double jeopardy claim, there

is no room for debate that petitioner has failed to come forth with any new evidence;

therefore, he cannot satisfy the miscarriage of justice exception that would allow a federal

court to hear this defaulted claim.  In short, petitioner has failed to make a substantial

showing of the denial of a constitutional right.  Therefore, he is not entitled to a certificate

of appealability.


ORDER

IT IS ORDERED that Daniel Landis's petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254 is DENIED.  No certificate of appealability shall issue.

Entered this 14th day of September, 2015.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge